IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

STEVEN LARON McARTHUR                                              PETITIONER

VS.                         CASE NO. 5:15CV00094 BRW/PSH

WENDY KELLEY, Director of the
Arkansas Department of Correction                                  RESPONDENT

PROPOSED FINDINGS AND RECOMMENDATIONS

INSTRUCTIONS

The following recommended disposition has been sent to United States District Court Judge Billy Roy Wilson. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

DISPOSITION

Steven Laron McArthur ("McArthur") seeks a writ of habeas corpus pursuant to 28 U.S.C. §2254. He is currently in the custody of the Arkansas Department of Correction (ADC). In 1991, McArthur was found guilty of capital felony murder by a Lonoke County jury. He was sentenced to life imprisonment without parole. On direct appeal, he claimed: (1) the evidence was insufficient to support his conviction; (2) the trial court erred in not allowing counsel to impeach his co-defendant with prior statements; (3) the trial court erred in denying his motion for change of venue; and (4) the trial court erred in denying his motion to dismiss because the capital murder statute was unconstitutional. The Supreme Court of Arkansas affirmed the conviction. *McArthur v. State*, 309 Ark. 196 (1992). He did not subsequently file a timely Rule 37 petition. However, in 1995, he sought Rule 37 relief, alleging eight instances of ineffective assistance of counsel. *Docket entry no.*

9-7. On September 14, 1995, the trial court summarily dismissed the petition as untimely. *Docket entry no. 9-9*. In January of 1997, McArthur filed a pleading styled "Traverse to States Response" with the trial court. On January 23, 1997, the trial court, construing the pleading as one for Rule 37 relief, dismissed the petition as untimely. *Docket entry no. 9-12*. Neither of the Rule 37 denials were appealed. In April of 1998, McArthur filed a petition for writ of error coram nobis with the trial court. This petition advanced fifteen claims for relief, including numerous claims of trial error by the prosecuting attorney, and three claims of ineffective assistance of counsel. No ruling was issued on this petition. Respondent Wendy Kelley ("Kelley") contends no ruling was forthcoming because the petition was improperly filed with the trial court. More than sixteen years after the last court filing by McArthur, he filed a petition on July 18, 2014, requesting the Arkansas Supreme Court reinvest the trial with jurisdiction and allow him to seek a writ of error coram nobis. On September 11, 2014, the Arkansas Supreme Court denied this request. McArthur sought a writ of certiorari from the United States Supreme Court. This request was denied on February 23, 2015.

On March 30, 2015, McArthur filed his petition for federal habeas corpus relief advancing the following claims for relief:

1. Actual innocence;
2. He was denied his constitutional and statutory right to a second and/or capital qualified attorney;
3. New evidence;
4. The prosecuting attorney erred by withholding exculpatory and impeachment evidence;
5. The prosecuting attorney's failure to disclose exculpatory and impeachment evidence resulted in the ineffective assistance of counsel on cross examination;
6. The conviction was based on testimony known by the prosecution to be perjured, denying McArthur due process;
7. Ineffective assistance of counsel in the following ways:

      a.     Trial counsel failed to renew his motion for a directed verdict;

      b.     Trial counsel failed to seek rulings on motions;

      c.     Trial counsel failed to impeach the co-defendant with prior inconsistent statements;

      d.     Trial counsel failed to object to improper jury instructions;

      e.     Trial counsel failed to file a motion to dismiss when McArthur was denied his right to a speedy trial;

      f.     Trial counsel elicited testimony that was harmful to McArthur's defense;

      g.     Trial counsel was not capital qualified; and

      h.     Denial of a second attorney resulted in ineffective assistance of counsel.

8.     Ineffective assistance of counsel on appeal in the following ways;

      a.     Failure to adequately address issues on appeal;

      b.     Failure to raise ineffective assistance of counsel claims;

      c.     Failure to raise a speedy trial claim and failure to raise trial counsel's failure to raise a speedy trial claim; and

      d.     Failure to argue error in McArthur not being provided a second trial attorney.

9.     He was illegally sentenced under the capital murder statute;

10.     Insufficient evidence;

11.     Error by the Arkansas Supreme Court when that Court did not reverse or remand due to trial counsel's failure to renew McArthur's motion for directed verdict;

12.     The trial court abused its discretion in refusing to allow McArthur to introduce Dr. Marino's deposition;

13.     McArthur should not be held accountable for trial counsel's failure to renew his motion for directed verdict;

14.     The Supreme Court should have granted McArthur's motion to proceed in writ of error coram nobis; and

15. Judicial misconduct in the following ways:

    a. Circuit Judge Burnett erred in putting the case off until the first of the year;

    b. Judge Burnett erred in refusing to grant a change of venue; and

    c. Judge Burnett should have recused himself.

Kelley contends: (1) the statute of limitations bars the petition as a whole; (2) the doctrine of procedural default bars consideration of claims one, two, seven, eight, nine, thirteen, and fifteen; (3) claims one, two, eleven, twelve, and fourteen are not cognizable in a federal habeas corpus petition; and (4) claims three, four, five, six, twelve, and fifteen were reasonably adjudicated by the Arkansas Supreme Court and are therefore without merit. McArthur filed a detailed response to the respondent's assertions. *Docket entry no. 11*. Our first inquiry is whether the petition for writ of habeas corpus is properly before the Court. It is conceded that the petition was filed long after the expiration of the limitations period.

Section 101 of 28 U.S.C. 2244 (as amended) imposes a one year period of limitation on petitions for writ of habeas corpus:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Kelley submits McArthur, who was convicted prior to the 1996 enactment of the limitations

period, must have filed his petition on or before April 24, 1997. He filed his petition on March 30, 2015, almost eighteen years after the limitations period began to run. Thus, Kelley contends McArthur's failure to act sooner is fatal to the petition.

McArthur counters Kelley's claim regarding the limitations period, offering three reasons why his petition should be ruled timely: (1) newly discovered evidence; (2) actual innocence; and (3) constitutional error and actual innocence. We will consider these assertions and how the limitations period may be affected.

The failure to file a timely petition can be excused under some circumstances:

> Equitable tolling is appropriate where extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time, or where a defendant's conduct lulls the prisoner into inaction. *Id.* The doctrine applies "only when some fault on the part of the defendant has caused a plaintiff to be late in filing, or when other circumstances, external to the plaintiff and not attributable to his actions, are responsible for the delay." *Flanders v. Graves,* 299 F.3d 974, 977 (8th Cir.2002). Equitable tolling is an "exceedingly narrow window of relief." *(Citation omitted).*

*Maghee v. Ault*, 410 F.3d 473, 476 (8th Cir. 2005).

**Newly Discovered Evidence:** McArthur states he received, in May of 2014, a transcribed statement of his co-defendant, Donald Hawley, and a letter purportedly written by Hawley and sent to McArthur's mother. These documents are attached to the petition. Hawley's statement is allegedly a transcript of a July 18, 1990, interview with Hawley and his attorney. The letter to McArthur's mother is undated. McArthur contends these he could not have known of these documents prior to May of 2014. Upon discovering the documents, he contends he acted quickly, filing his petition for writ of error coram nobis on July 18, 2014. McArthur claims the prosecutor possessed the transcribed statement of Hawley and failed to disclose this to McArthur. We are aided in our consideration of these allegations by the Arkansas Supreme Court's decision denying the petition for writ of error coram nobis. The Arkansas Court summarized the newly discovered evidence, and provided background on the events which occurred more than twenty-five years ago and led to the convictions of McArthur and Hawley:

> In his petition, petitioner raises three grounds for the writ. To understand the

claims, a brief summary of the facts of the case is necessary. On January 21, 1990, a hunter discovered the body of sixteen-year-old Rodney Spence in Lonoke County. Spence had been shot twice in the head at close range. Spence's father testified at petitioner's trial that, on the afternoon of January 20, 1990, Spence had left his parents' home with the understanding that he would be home by 10:00 p.m. that night. Spence was driving a 1986 red Ford Ranger. Spence's uncle testified that he saw Spence later that evening, and Spence said he was going to Cabot, Arkansas. When Spence did not return home by 10:30, his parents reported him missing. His body was discovered the next day.

On January 23, 1990, a patrolman with the Plano Texas Police Department pulled over a red Ford Ranger with Arkansas plates after hearing a national broadcast to be on the lookout for the vehicle. Donald Hawley, the driver of the truck, informed the Texas authorities that he and petitioner had been in Cabot, Arkansas, the past weekend and stayed at petitioner's girlfriend's apartment. Hawley stated that petitioner had left the apartment for a while on Saturday, and, when petitioner returned, he was driving the red truck, which Hawley and petitioner drove to Texas. The Plano police executed a search warrant on petitioner's sister's apartment where they found a gun in a nightstand drawer. At trial, the parties stipulated that the gun was the weapon that had been used to shoot Spence.

Donald Hawley eventually pled guilty to capital murder and testified at petitioner's trial. Hawley testified that petitioner had approached Spence in the parking lot of a grocery store in Cabot. According to Hawley, he and petitioner arranged for Spence to give them a ride to a liquor store and Spence drove them to two liquor stores and a convenience store. When Spence went inside the convenience store, petitioner informed Hawley that he was going to ask Spence to drive them to a friend's house and instructed Hawley to act sick when petitioner prompted him to do so. Petitioner then directed Spence to drive to a remote location whereupon petitioner told Hawley to feign sickness. When Spence stopped the truck, petitioner and Hawley got out of the truck on the passenger side. Spence also got out of the truck, and petitioner asked Spence for assistance in getting Hawley back into the truck. Hawley then stepped around to the rear of the truck, aimed a gun at Spence, and instructed Spence to lie on the ground and empty his pockets. Hawley testified that petitioner said, "Well, shoot him," and Hawley shot Spence in the head. As the two men carried Spence's body away, petitioner stated that Spence was still alive. According to Hawley, petitioner said that he did not want to see Spence suffer, and petitioner fired a second shot into Spence's head. After killing Spence, Hawley and petitioner took Spence's truck and left for Texas.

As his first ground for the writ, petitioner asserts that he has two pieces of new evidence. The first is an undated letter from Hawley to petitioner's family in which he admits to testifying falsely that petitioner fired the second shot and explains that he only did so to avoid the death penalty and to obtain a promise of favorable treatment by the prison authorities. The other new evidence is a transcript of a pretrial discussion between Hawley and his attorney. In the statement, Hawley said that he fired both shots and also states that, when he and petitioner got to the spot where Spence's body ultimately was found, petitioner told Spence to stop the truck because Hawley was going to be sick. Hawley said in the statement that the feigned sickness was planned ahead of time and that

petitioner told him to shoot Spence after Spence got out of the truck because Spence was a witness and could send them to prison. Petitioner contends that this statement was never disclosed to the defense in violation of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

With respect to the undated letter from Hawley to "Mrs. McArthur," the letter does not indicate that petitioner was not present when the shooting occurred or otherwise contradict Hawley's testimony concerning the plan to trick the victim into going with Hawley and petitioner. Rather, it is essentially a recantation of Hawley's testimony that petitioner fired one of the shots into Spence's head. As such, the letter is not a ground for granting a writ of error coram nobis. A claim of recanted testimony, standing alone, is not cognizable in an error-coram-nobis proceeding. *Anderson v. State,* 2012 Ark. 270, 423 S.W.3d 20 (per curiam) (citing *Jackson v. State,* 2010 Ark. 81, 2010 WL 1006491 (per curiam)); *Smith v. State,* 200 Ark. 767, 140 S.W.2d 675 (1940) (holding that the writ was not available to afford relief on the ground that the principal witness against the accused had recanted and that others since the accused's conviction had confessed to the crime); *see also Taylor v. State,* 303 Ark. 586, 799 S.W.2d 519 (1990) (A witness's recantation of part of his trial testimony was not a ground for the writ as recantation of testimony did not fit within the remedy.).

As to Hawley's statement to his attorney that petitioner alleges was withheld from the defense, failure to disclose evidence favorable to the defense in violation of *Brady,* if established, is cause to grant the writ. *Pitts,* 336 Ark. 580, 986 S.W.2d 407. In *Strickler v. Greene,* 527 U.S. 263, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999), the Supreme Court revisited *Brady* and declared that, when the petitioner contends that material evidence was not disclosed to the defense, the petitioner must show that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." 527 U.S. at 280, 119 S.Ct. 1936 (quoting *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985)). In *Strickler,* the Court also set out the three elements of a true *Brady* violation: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued. *Strickler,* 527 U.S. 263, 119 S.Ct. 1936; *Buchanan v. State,* 2010 Ark. 285, 2010 WL 2210923 (per curiam).

Petitioner has not established a *Brady* violation with respect to Hawley's statement. First, he offers no substantiation for the claim that the prosecution was aware of the statement and concealed it from the defense. Secondly, even if the prosecution was aware of the statement, it was not favorable to the defense to the degree that petitioner has demonstrated that the outcome of the trial would have been different had the defense had the statement at trial. The law in Arkansas makes no distinction between the criminal liability of a principal and an accomplice. Ark.Code Ann. § 5–2–402(2) (Repl.2006). We have held that under the accomplice-liability statute, a defendant may properly be found guilty not only of his own conduct but also of the conduct of his accomplice. *Winters v. State,* 2013 Ark. 193, 427 S.W.3d 597 (citing *Purifoy v. State,* 307 Ark. 482, 822 S.W.2d 374 (1991)). When two or more persons assist one another in the commission of a crime, each is an accomplice and criminally liable for the conduct of both. *Id.* An admission by one does not exculpate the other.

> *Branstetter v. State,* 346 Ark. 62, 57 S.W.3d 105 (2001). It is the petitioner's burden to show that the outcome of the proceeding would have been different had the statement been provided to the defense, and the incriminating material contained in it supports Hawley's testimony about petitioner's role in the crime with the exception of who fired the second shot. Petitioner's failure to show that the prosecution was aware of the statement and his failure to establish that the outcome of the trial would have been different had the statement been available to the defense defeat petitioner's claim of a *Brady* violation.
>
> Petitioner further asserts that the State's withholding of evidence that was exculpatory and could have been used to impeach the State's witnesses caused his counsel to be ineffective and, further, that there were other instances in which counsel was ineffective that did not pertain to the allegedly withheld evidence. We do not find that petitioner has established that he was prejudiced by the State's withholding of any particular evidence. Moreover, allegations of ineffective assistance of counsel are outside the purview of a coram-nobis proceeding. Mason v. State, 2014 Ark. 288, 436 S.W.3d 469; *Wright,* 2014 Ark. 25 (citing *State v. Tejeda–Acosta,* 2013 Ark. 217, 427 S.W.3d 673); *Watts v. State,* 2013 Ark. 485, 2013 WL 6157325 (per curiam). Such claims are properly raised in a timely petition for postconviction relief pursuant to Arkansas Rule of Criminal Procedure 37.1. A petition for writ of error coram nobis is not a substitute for raising an issue under Rule 37.1. *Mason,* 2014 Ark. 288, 436 S.W.3d 469; *Travis v. State,* 2014 Ark. 82, 2014 WL 689056 (per curiam).
>
> Petitioner next argues that the writ should issue because his conviction was based on testimony known by the State to be false. The argument is largely based on petitioner's claim that Hawley fired both shots and that the State withheld Hawley's statement admitting to having done so, thus violating *Brady.* As stated, the allegation concerning Hawley's statement does not rise to a *Brady* violation. Petitioner has not shown that there was some fundamental flaw in the proceeding against him that warrants granting the writ. *See Evans v. State,* 2012 Ark. 161, 2012 WL 1223773 (per curiam).

*McArthur v. State*, 2014 Ark. 367.

The documents which McArthur describes in his habeas petition as "newly discovered evidence" are the same documents examined by the Arkansas Supreme Court in the 2014 opinion. Liberally construing the pleadings, McArthur claims the limitations period should be tolled from April 24, 1997, until late May, 2014, commencing with his receipt of the documents, because that was "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. §2241(1)(D). For two reasons, we do not agree.

First, we consider the "factual predicate" for McArthur's claim of actual innocence.

He points to the documents which appeared in May of 2014. These documents, according to him, demonstrate he did not fire the second shot and thus prove his innocence. The flaw with this argument is that McArthur presumably has known this since Hawley testified at the 1991 trial. McArthur does not deny being at the scene of the crime, and from the moment of Hawley's testimony was aware of the "factual predicate" of the claim he now advances. The Eighth Circuit Court of Appeals guides our consideration of this issue. In *Earl v. Fabian*, 556 F.3d 717 (8th Cir. 2009), the petitioner attacked his conviction because his videotaped confession introduced at trial was obtained after he invoked his right to counsel. The petitioner's habeas corpus petition was filed more than one year after the conviction became final, but petitioner Earl argued he was unable to discover the factual predicate for his habeas claim until he received his case file. The case file was no doubt slow to arrive to Earl, and he received the file in September of 2006. The limitations period expired on November 30, 2006, and Earl filed his habeas corpus petition in March of 2007. The Appeals Court addressed his contention that the factual predicate for his claim could not have been discovered before he received the case file in September 2006:

> The statutory language in § 2244(d)(1)(D), unlike that in § 2244(d)(1)(B), contains a requirement that the petitioner have exercised "due diligence." Earl argues that he could not have discovered the factual predicate of his habeas claim through the exercise of due diligence until he received his case file. Since he allegedly received that in September of 2006 and filed his petition on January 4, 2007, he argues it was timely under § 2244(d)(1)(D). This argument is not persuasive. "[T]he factual predicate of a petitioner's claims constitutes the vital facts underlying those claims." *McAleese v. Brennan,* 483 F.3d 206, 214 (3rd Cir.2007) (internal quotation marks omitted).
>
> Earl alleges that his constitutional rights were violated when the state introduced his confession at trial, and this allegation is the vital fact underlying his claim. Because Earl's habeas petition lists this single claim for relief and he made the very same argument before the state courts, he knew the factual predicate of his claim even before the date on which he could file for habeas relief. While Earl certainly wanted his case file earlier, "[s]ection 2244(d)(1)(D) does not convey a statutory right to an extended delay ... while a habeas petitioner gathers every possible scrap of evidence that might ... support his claim." *Flanagan v. Johnson,* 154 F.3d 196, 199 (5th Cir.1998). Earl is "confusing his knowledge of the factual predicate of his claim with [the process of] gathering evidence in support of that claim." *Id.* As Judge Easterbrook has explained, "[a] desire to see more information in the hope that something will turn up differs from the factual

9

predicate of a claim or claims for purposes of 2244(d)(1)(D)." *Johnson v. McBride,* 381 F.3d 587, 589 (7th Cir.2004).

*Earl v. Fabian*, 556 F.3d 717, 725 (8th Cir. 2009). Using the *Earl* language, the "vital facts" underlying McArthur's actual innocence claim – his claim that Mr. Hawley fired both shots – were known to McArthur years ago. As a result, we find the limitations period did not commence with McArthur's receipt of the documents in May of 2014.

**Actual Innocence:** McArthur next contends his actual innocence operates to equitably toll the limitations period. In *McQuiggin v. Perkins*, ___ U.S. ___, 133 S.Ct. 1924 (2013), the Supreme Court held that actual innocence, if proved, may serve as a gateway through which the petitioner may pass to overcome the expiration of the statute of limitations. The Supreme Court emphasized, however, that a tenable actual innocence gateway plea is rare. To advance a tenable claim, the petitioner must meet the standard set forth by the Supreme Court in an earlier case:

> To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial. Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful.

*Schlup v. Delo*, 513 U.S. 298, 324 (1995). The Court goes on to set the standard required of McArthur; he "must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." 513 U.S. at 327. Here, McArthur points to the transcript of Hawley's 1990 interview and to the undated letter purportedly from Hawley to McArthur's mother to establish his innocence. These documents fail to satisfy the *Schlup* standard requiring new reliable evidence. While these documents emphasize that McArthur may not have pulled the trigger, by their own terms the documents do not exculpate him. McArthur's presence and participation in the crime is not disputed. Even if he did not pull the trigger for the second shot to the victim, the Arkansas Supreme Court correctly describes McArthur's accomplice liability. Therefore, any quarrel concerning who pulled the trigger does not amount

to new reliable evidence of actual innocence. We also note recantations by co-defendants rate low on the reliability scale, especially when the statement itself is not given under penalty of perjury, and when the statement includes Hawley's caveat that he "can't testify" to the contents of his statement. *Docket entry no. 2, page 52*. "Recantation by convicted co-defendants is viewed with a considerable element of skepticism . . ." *Hall v. Lockhart*, 806 F.2d 165, 168 (8th Cir. 1987). In the *Hall* case, as here, the co-defendants were serving life sentences "and thus may have nothing to lose by perjuring themselves." *806 F.2d at 168*. Further, the co-defendants in the *Hall* case indicated that Hall did not participate in the murders. Hawley, by contrast, does not offer a total recantation. Instead, he merely changes some details of McArthur's participation in the crime. As previously noted, the level of participation described by Hawley in his letter obtained by McArthur in 2014 was more than sufficient to convict McArthur of capital murder. State courts are the ultimate expositors of their own state's laws, and federal courts entertaining habeas corpus petitions are bound by the construction placed on a state's criminal statutes by the courts of that state except in extreme circumstances. *Mendiola v. Estelle*, 635 F.2d 487 (5th Cir. 1981). Here, there is no reason to reject the state court's construction and application of its statutes regarding accomplice liability.

In summary, McArthur falls short of the required showing for actual innocence in a habeas corpus setting. There is no merit to the claim of actual innocence, and it follows that the innocence allegation does not toll the running of the limitation period.

**Constitutional error and actual innocence:** For his third reason to avoid the limitations bar, McArthur cites six constitutional errors that probably resulted in the conviction of an innocent person. These instances are not reasons to toll the limitations period, but are simply claims of trial and appellate error. For example, asserting the trial court lacked jurisdiction to try the case is not relevant to a discussion of the limitations period. *Docket entry no. 11, page 4*. McArthur's claim that "Constitutional error and actual innocence" tolled the limitation period is an attempted end run around the limitation period to the merits of claims which were ripe for

decision more than two decades ago. The constitutional errors complained of are not grounds for tolling the limitations period, and we have already addressed the claim of actual innocence.

In summary, the petition for writ of habeas corpus was filed with this Court almost eighteen years after it should have been. The petitioner fails to plead or prove any reason why the limitations period should have been tolled. As a result, we recommend the petition be dismissed as untimely.[1]

Pursuant to 28 U.S.C. § 2253 and Rule 11 of the Rules Governing Section 2554 Cases in the United States District Court, the Court must determine whether to issue a certificate of appealability in the final order. In § 2254 cases, a certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(1)-(2). The Court finds no issue on which petitioner has made a substantial showing of a denial of a constitutional right. Thus, we recommend the certificate of appealability be denied.

IT IS SO ORDERED this 13th day of October, 2015.

_____
UNITED STATES MAGISTRATE JUDGE

---

[1] We need not, and do not, consider the procedural default argument under the circumstances in this case, where the limitations period has long since expired. Similarly, we need not consider that some claims are not cognizable federal habeas claims, or that some claims were reasonably adjudicated in state court and entitled to deference, when none of the claims are timely.